**February 10, 2016**

# In the Court of Appeals of Georgia

A15A2025.   SENTINEL   INSURANCE   COMPANY/THE   ME-032
HARTFORD v. USAA INSURANCE COMPANY.

MERCIER, Judge.

We granted an application for interlocutory appeal in this case to review the trial court's determination of priority of underinsured motorist ("UM") coverage between the parties, and to address the priority of UM coverage in the context of limited liability companies. We conclude that the "more closely identified with" test shows that the trial court incorrectly determined the priority of UM coverage. We therefore reverse.

The facts relevant to our analysis are undisputed. The underlying case is a personal injury action for damages arising from an automobile collision. Plaintiff Katheleen Thomas ("Thomas") alleged that defendant Clarence Carlton negligently

rear-ended her vehicle in September 2012. Thomas sought UM coverage from the two insurance companies who are parties to this appeal, and served them as defendants. Both insurance companies filed answers to Thomas's complaint. One of the insurers, USAA Insurance Company ("USAA"), filed a motion to determine the priority of UM coverage.

Sentinel Insurance Company/The Hartford ("Sentinel") issued a commercial automobile liability policy to named insured JK Lakeside, LLC ("JK Lakeside"). JK Lakeside is a Georgia limited liability company registered with Georgia's Secretary of State's office. JK Lakeside was the company under which Thomas operated the liquor store "Katie's Liquor, Beer and Fine Wine." The vehicle Thomas was driving at the time of the collision was owned by JK Lakeside, and was insured by Sentinel for UM coverage listing JK Lakeside as the only named insured. The premiums for the Sentinel policy were paid to Sentinel through JK Lakeside because Thomas was using the vehicle as a work vehicle. Thomas was also covered under a personal automobile liability policy issued by USAA to her spouse. The USAA policy did not cover JK Lakeside or the vehicle operated by Thomas at the time of the collision.

In Georgia, "stacking" policies of underinsured or uninsured motorist coverage is permitted, "but the priority of the multiple UM carriers must be determined." *Canal*

2

*Ins. Co. v. Merchant*, 225 Ga. App. 61, 62 (483 SE2d 311) (1997); *Great Divide Ins. Co. v. Safeco Ins. Co.*, 260 Ga. App. 531, 532 (580 SE2d 313) (2003). Georgia courts have utilized two tests in making this determination: the "receipt of premium" test and the "more closely identified with" test. *Canal Ins. Co.*, supra; *Great Divide Ins. Co.*, supra. Because it is undisputed that Thomas did not pay a premium for either policy, the "receipt of premium test" is inapplicable to this case. See *Southern Guaranty Ins. Co. v. Premier Ins. Co.*, 219 Ga. App. 413, 414 (465 SE2d 521) (1995). Therefore, we must turn to the "more closely identified with" test to determine which policy provides primary coverage. Applying that test, we must examine Thomas's relationship to the policies of insurance, to determine the policy with which she is more closely identified, and thus which policy provides primary coverage. See *Canal Ins. Co.*, supra.

Two of our previous opinions addressing the priority of UM coverage between an employer policy and a family policy are particularly relevant to our analysis here. In *Travelers Indemnity Co. v. Maryland Casualty Co.*, 190 Ga. App. 455 (379 SE2d 183) (1989), the plaintiff was injured in the course of her employment while driving a vehicle owned by her employer, a corporation. She was insured by both her employer's insurance policy and her mother's household family policy. Id. The trial

3

court held that the plaintiff was more closely identified with her corporate employer's policy because she was driving a vehicle owned and insured by her employer and she was injured while acting in the course of her employment. Id. at 456. We reversed, holding that the controlling consideration was "the relationship of the injured plaintiff to the policy rather than the circumstances of the injury to the policy." Id. at 457. In *Travelers Indemnity Co.*, we concluded that the plaintiff was more closely identified with her mother's UM policy, than her employer's policy, because she was insured as a family member. Id.

However, in *Southern Guaranty Ins. Co. v. Premier Ins. Co.,* 219 Ga. App. 413 (465 SE2d 521) (1995), a case that also dealt with priority of UM coverage between a business policy and a family policy, we held that the plaintiff was more closely identified with the business policy. In *Southern Guaranty Ins. Co.*, the plaintiff, who was the sole proprietor of a dance school, was injured while driving her personal vehicle; the vehicle was covered under only the business's policy, and the plaintiff was an insured driver under her husband's policy. Id. at 413. Even though the plaintiff in *Southern Guaranty Ins. Co.* was a named insured on her husband's policy, we distinguished the case from *Travelers Indemnity Co.* because the business in *Southern Guaranty Ins. Co.* that held the policy was a sole proprietorship (owned and

4

operated by the plaintiff) as opposed to a corporation. Id. at 414. We held that obligations or benefits incurred by the dance school were individual in nature, and they were in fact the obligations or benefits of the plaintiff individually. Id. at 415. Consequently, the dance school "simply was not a distinct entity capable of being the true named insured on the contract." Id. at 415. Thus, with respect to the plaintiff we held, "[i]t defies logic to hold that she shared a closer relationship with her husband than with herself." Id.

In the instant case, the trial court found that Thomas was more closely identified with the Sentinel policy than with the USAA policy. In making this determination the trial court relied on *Southern Guaranty Ins. Co.* because Thomas owned and operated the liquor store, co-owned JK Lakeside, and was a title holder on the vehicle involved in the collision. Sentinel argues the trial court erred in applying *Southern Guaranty Ins. Co.* and should have relied instead on *Travelers Indemnity Co.* because a limited liability company is more like a corporation than a sole proprietorship.

USAA argues that JK Lakeside is more like the sole proprietorship in *Southern Guaranty Ins. Co.* because Thomas shares a closer relationship with the LLC than with her husband. USAA points to the facts that Thomas co-owned a "closely held

5

business," and the vehicle involved in the collision was titled in both her name and the name of JK Lakeside. Furthermore, the liquor store Thomas operated was named "Katie's Liquor, Beer and Fine Wine," and thus she was more closely identified with the business policy than her husband's policy.

Alternatively, Sentinel argues that the trial court ignored the corporate form of JK Lakeside and that because JK Lakeside is a separate entity from Thomas, Thomas is more closely identified with her husband's policy. We hold that because a limited liability company is a separate legal entity from its owners, Thomas is more closely identified with her family policy.

This Court, has not previously addressed the priority of UM coverage in the context of a limited liability company. A limited liability company is a business entity that (with some exceptions not pertinent here) protects its members from personal liability, debts, or obligations of the company. See OCGA § 14-11-303(a). Consequently, we have held,

> [j]ust as the so-called corporate veil protects an individual shareholder of a corporation from personal liability for the debts of the separate corporate entity (so long as the corporate forms are maintained) so is a member of a limited liability company (LLC) veiled from personal liability for the debts of the separately maintained LLC entity.

6

*Bonner v. Brunson*, 262 Ga. App. 521 (585 SE2d 917) (2003) (citations and punctuation omitted).

Limited liability companies are separate legal entities from their members. Id. Thus, unlike the sole proprietorship in *Southern Guaranty Ins. Co.*, JK Lakeside was a distinct legal entity capable of being the true named insured on a contract. Accordingly, just as in *Travelers Indemnity Co.*, Thomas was more closely identified with her family policy than with the business policy. Because Thomas was more closely identified with her family's UM coverage (provided by USAA) than with the business policy (provided by Sentinel), USAA rather than Sentinel was the primary UM carrier. The trial court erred by determining otherwise.

*Judgment reversed. Doyle, C.J., and Phipps, P.J., concur*.

7